**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 14-4318
_____

UNITED STATES OF AMERICA

v.

THING HUNG LE,

Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(Crim. No. 2-09-cr-00050-001)

District Judge: Juan R. Sanchez

Submitted Under Third Circuit LAR 34.1(a)
April 19, 2016

BEFORE: MCKEE, Chief Judge,  FUENTES,** and ROTH, *Circuit Judges*

(Opinion Filed: September 6, 2016)
_____

OPINION*
_____

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

** Honorable Julio M. Fuentes assumed senior status on July 18, 2016.

FUENTES, *Circuit Judge*:

Thinh Hung Le was charged and convicted of various offenses stemming from his involvement in a complex international drug scheme. He appeals his criminal sentence of 252 months' imprisonment based on that conviction. Le claims the District Court erred in (1) determining that he was a "leader" or "organizer" of a drug organization, (2) applying a base level sentence for methamphetamine rather than ecstasy, and (3) imposing a substantively unreasonable sentence. For the reasons below, we will affirm the sentence imposed by the District Court.

I. BACKGROUND

In 2006, the U.S. Department of Homeland Security ("DHS") began investigating a drug trafficking ring between Canada and the United States. Eventually, DHS agents learned that Veronique Nguyen, a Vietnamese immigrant, was selling drugs in the U.S. as part of the operation. They suspected that she was receiving these drugs from Canadian suppliers. After obtaining a warrant, federal agents wiretapped Nguyen's phone.

After listening to Nguyen's phone conversations, agents discovered that one of her drug suppliers was a man named "Thinh." Thinh was apparently supplying Nguyen with drugs from Canada. However, DHS agents were unable to determine Thinh's identity through monitoring Nguyen's phone calls, so they set up a surveillance operation to uncover Thinh's identity.

In April 2006, Thinh sent a courier to Philadelphia to supply Nguyen with a large quantity of marijuana. DHS agents and Philadelphia police officers monitored the activity of Nguyen and her boyfriend, Chung Van Bui, during their attempt to pick up the

2

marijuana from suppliers. During the deal, Thinh's courier apparently waved to Nguyen and Van Bui to let them know he was sent by Thinh to deliver the drugs. However, after being alarmed by police in the area, Nguyen and Van Bui drove away from the scene of the deal. Although Nguyen and Bui never received the drugs, officers were able to pull the courier's van over and thereafter seize 105 pounds of marijuana. They did not, however, arrest Nguyen or her associate at that time.

The investigation of the drug ring continued. In July 2006, agents intercepted another phone call between Nguyen and Thinh. During the call, Thinh told Nguyen that she owed him $62,000 for a prior purchase of drugs. The two agreed that Tony Nguyen, whom Nguyen describes as her "nephew," would go to New York to make the payment. Soon after, Tony paid Thinh in New York City's Chinatown neighborhood.

Later in July, agents again intercepted phone conversations between Nguyen and Thinh. During the call, authorities learned that they planned to transfer 26,000 tablets of ecstasy from Canada to Nguyen in the U.S. Nguyen would then sell the tablets in the U.S. However, during the call, Nguyen expressed concern about selling the ecstasy because she had little experience doing so. Nonetheless, Thinh said that he would help Nguyen with the process and reassured her that it was "very easy money."[1]

The deal moved forward, starting with the shipment of the drugs from Canada to the U.S. During one delivery, Philadelphia police officers stopped a car driven by another courier sent by Thinh, conducted a search of the car, and seized the ecstasy. Police also found 183 grams of methamphetamine mixed within the ecstasy tablets. After

---

[1] (App. at 114.)

3

seizing the drugs, the police arrested Nguyen, Van Bui, and Tony Nguyen. Despite the success of the police's operation, Thinh's identity remained unknown.

After her arrest, Nguyen agreed to cooperate with the Government. To that end, in October of 2006, she agreed to purchase 10,000 tablets of ecstasy from Thinh under police surveillance. Nguyen successfully ordered the tablets from Thinh, and the two agreed that Nguyen would pick up the ecstasy from yet another one of Thinh's couriers in Philadelphia. When Thinh's courier arrived, police officers and government agents arrested the courier and seized the ecstasy.

Soon after, DHS contacted Canadian law enforcement to assist them in identifying Thinh. To that end, Canadian authorities set up a controlled buy and, as a result, they were able to identify Thinh and provide a photograph of Thinh to DHS. DHS was subsequently able to identify Thinh as Thinh Hung Le ("Le" hereinafter).

Shortly thereafter Le was arrested by Canadian Officers and taken into custody by U.S. agents. He was indicted on: one count of conspiracy to import methamphetamine, MDMA ("ecstasy"), and marijuana, in violation of 21 U.S.C. § 963; one count of conspiracy to distribute the same, in violation of 21 U.S.C. § 846; one count of importation of methamphetamine and MDMA, in violation of 21 U.S.C. § 952(a); one count of using a telephone to facilitate drug trafficking, in violation of 21 U.S.C. § 843(b); one count of importation of methamphetamine, in violation of 21 U.S.C. § 952(a); and one count of distribution of MDMA, in violation of 21 U.S.C. § 841(a)(1). Ultimately, Le was tried and convicted on all counts.

Prior to his sentencing, Le filed a motion for a downward departure from the Probation Office's Pre-Sentencing-Report, which suggested a Guidelines range of 292-365 months based upon an offense level of 40 and criminal history category of I. Le objected to the Guidelines range on two grounds. First, he claimed that he should not have been categorized as a leader or organizer of the drug conspiracy, and thus a four-level "role enhancement" under the Guidelines was inappropriate. Second, he claimed that an offense level of 40 was inapplicable because the second shipment of pills weighed 6600 grams, yet only 183 grams of the pills constituted methamphetamine. In consequence, Le claimed that it was fundamentally unfair that the Guideline was based on the weight of the methamphetamine and not the weight of the ecstasy. After considering all of the facts, the court granted a 41 month downward variance and sentenced Le to 252 months' imprisonment, a below-the-Guidelines range sentence.

On appeal, Le makes three main arguments. First, he claims that the District Court incorrectly applied a four-level role enhancement based on its determination that Le was a "leader" or "organizer" of a drug organization. Le contends that he was merely a middle-man in the operation and maintained only a buyer-seller relationship with Nguyen. Second, Le claims that the District Court erred by applying the base offense level for methamphetamine rather than that of ecstasy. To that end, he contends that there was a very small amount of methamphetamine contained in the first shipment pills and no methamphetamine in the second shipment, and therefore the District Court should have applied the base offense level for ecstasy, not methamphetamine. Third, Le claims

that, overall, his sentence was substantively unreasonable because the court failed to consider certain mitigating factors.

## II. DISCUSSION[2]

Le's first contention is that the District Court erred in applying the leadership or organizer enhancement to his sentence. Section 3B1.1 of the Sentencing Guidelines provides for a four-level sentencing enhancement if the defendant was "an organizer or leader of criminal activity that involved five or more participants or was otherwise extensive." To qualify for the leadership enhancement, a defendant need only direct or exercise or control over the actions of one other individual involved in the operation.[3]

Evidence at trial demonstrated that Le had extensive involvement in the international drug importation scheme. Le gave direction to Nguyen regarding the specific deals at issue. He dictated what drugs the operation would export from Canada, and where and when the deals would take place in the U.S. He recruited and arranged particular couriers to deliver the drugs to buyers in the U.S. In short, the evidence at trial strongly demonstrated that Le had a substantial role in orchestrating the drug trafficking enterprise and was an "organizer" or "leader" of the scheme within the meaning of

---

[2] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 18 U.S.C. § 3742 and 28 U.S.C. § 1291. We review a district court's finding of fact supporting an upward adjustment to a sentencing level for clear error and exercise plenary review of a district court's construction of the Sentencing Guidelines. *United States v. Bierley*, 922 F.2d 1061, 1064 (3d Cir. 1990).

[3] *See* U.S.S.G. § 3B1.1 app. note 2; *United States v. Katora*, 981 F.2d 1398, 1402 (3d Cir. 1992) ("To apply section 3B1.1, a district court must find that the defendant exercised control over at least one other person.").

§ 3B1.1. We therefore conclude that the District Court did not err in applying the role enhancement" to Le's sentence.

Le next contends that the District Court erred by applying the base offense level for methamphetamine to his sentence because the first shipment of ecstasy only contained a small portion of methamphetamine and the second shipment contained no methamphetamine. However, the Government argues that Le's contention is substantively unavailing and that the District Court followed the sentencing guidelines correctly.

As the Government points out, Application Note 1 to U.S.S.G. § 2D1.1 states:

> Unless otherwise specified, the weight of a controlled substance set forth in the table refers to the entire weight of any mixture or substance containing a detectable amount of the controlled substance. If a mixture or substance contains more than one controlled substance, the weight of the entire mixture and substance is assigned to the controlled substance that results in the greater offense level.

Here, based on this language, we discern no error in the District Court's application of the higher offense level for methamphetamine when calculating Le's sentence, as the pills clearly consisted of both ecstasy and methamphetamine, and the latter carried a higher offense level.[4]

Moreover, the record reveals that the District Court adequately considered Le's argument regarding the comparatively small amount of methamphetamine contained in the pills when it separately addressed his request for a variance under the § 3553(a)

---

[4] *Chapman v. United States*, 500 U.S. 453, 459 (1991); *see also United States v. Gori*, 324 F.3d 234, 239 (3d Cir. 2003).

discretionary factors.[5]  We therefore reject Le's contention that the court should have applied the base offense level for ecstasy and not, as it did, methamphetamine.

Le also contends that, over all, the District Court's imposition of a 252 month prison sentence was substantively unreasonable, given certain mitigating factors, including his experience living in poverty in Vietnam; his family circumstances; and the small amount of methamphetamine found in the ecstasy pills.[6]  We find this final argument unavailing.  Le's conduct clearly supported the sentence imposed.  As noted, Le substantially orchestrated the scheme.  He was heavily involved in recruiting and coordinating couriers.  And, he directed all aspects of the operation, which resulted in the importation of tens of thousands of ecstasy pills into the U.S.  Moreover, as the Government noted during sentencing, Le's drug offense was quite serious in nature, as buyers of the ecstasy pills may not have known that they were also taking methamphetamine, a very dangerous drug on its own.[7]  In short, nothing in the record suggests that the District Court's imposition of a below-Guidelines-range sentence was substantively unreasonable.

## III.    CONCLUSION

For substantially the same reasons set forth in the record, we will affirm Le's sentence in its entirety.

---

[5] (App. at 339, 389.)

[6] We review a final criminal sentence for reasonableness. *United States v. Booker*, 543 U.S. 220, 261 (2005).

[7] (App. at 466-467.)